UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MATTHEW CARR, TERRY CARR, DAVID TUMBLIN, and GREGORY BROWN, individually and on behalf of all similarly situated individuals,<br><br> Plaintiffs,<br>-v-<br><br>FLOWERS FOODS, INC. and FLOWERS BAKING CO. of OXFORD, LLC<br><br> Defendants. | Civil Action No. 15-6391 |
| LUKE BOULANGE, individually and on behalf of all similarly situated individuals,<br><br> Plaintiffs,<br><br>-v-<br><br>FLOWERS FOODS, INC. AND FLOWERS BAKING CO. OF OXFORD, LLC<br><br> Defendants. | Civil Action No. 16-2581 |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

I.      Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

II.     Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

III.    Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

        A.      Litigation History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

        B.      Settlement Negotiations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

                1.      Monetary Terms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

                2.      Non-Monetary Terms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   **7**

IV.     Notice Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

V.      Final Approval . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

        A.      Because Class Counsel and Plaintiffs vigorously advocated for the Class,
                resulting in a settlement that drew no objections from the Class, Class
                Counsel and Plaintiffs adequately represented the Class under Rule
                23(e)(2)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

        B.      Through serious, adversarial negotiations before an experienced mediator,
                Class Counsel engaged in arms-length negotiations under Rule 23(e)(2)(B).
                . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

        C.      Because the Settlement confers substantial monetary and non-monetary
                benefits to the Class, and because the Settlement reasonably balances the
                strengths of the Class claims against the risks posed by further litigation, the
                Settlement is adequate under Rule 23(e)(2)(C). . . . . . . . . . . . . . . . . . . . .   14

        D.      Because the Settlement apportions payment between Class Members based
                on objective criteria such as the Class Member's claims, the time worked and
                compensation received, the Settlement treats Class Members equitably under
                Rule 23(e)(2)(D). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

        E.      Because the Settlement reflects reasonable compromise of bona fide disputes
                under the FLSA, the Settlement should also be approved for the Opt-In
                Plaintiffs' collective-action claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

VI.     Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

# <u>TABLE OF AUTHORITIES</u>

<u>Federal Statutes</u>

Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3


<u>Federal Rules</u>

Fed. R. Civ. P. 23(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

Fed. R. Civ. P. 23(c)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

Fed. R. Civ. P. 23(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1, 19

Fed. R. Civ. P. 23(e)(2)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2, 12 & n. 2, 19

Fed. R. Civ. P. 23(e)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12-13

Fed. R. Civ. P. 23(e)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

Fed. R. Civ. P. 23(e)(2)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14-17

Fed. R. Civ. P. 23(e)(2)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

Fed. R. Civ. P. 23, Advisory Committee Note (2018)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12 n. 2


<u>Federal Cases</u>

*Acevedo v. Brightview Landscapes, LLC*, No. 13-2529, 2017 WL 4354809 (M.D. Pa. Oct. 2, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

*Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, No. 15-2460, 2016 WL 4766079 (E.D. Pa. Sept. 13, 2016)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

*In re Chickie's & Pete's Wage & Hour Litig.*, No. 12-6820, 2014 WL 911718 at *2 (E.D. Pa. Mar. 7, 2014)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

*Cuttic v. Crozer-Chester Med. Ctr.*, 868 F. Supp. 2d 464 (E.D. Pa. 2012)  . . . . . . . . . . . . .   19

*Hall v. Accolade, Inc.*, No. 17-3423, 2020 WL 1477688 at *8 (E.D. Pa. Mar. 25, 2020)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   *passim*

*Kapolka v. Anchor Drilling Fluids USA*, No. 18-1007, 2019 WL 5394751 (W.D. Pa. Oct. 22, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

*Lynn's Food Stores, Inc. v. United States.* 679 F.2d 1350 (11th Cir. 1982) . . . . . . . . . . . .   18

*In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410 (3d Cir. 2016)   11

*Rose v. Travelers Home & Marine Ins. Co.*, No. 19-977, 2020 WL 4059613 (E.D. Pa. July 20, 2020)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12 n. 2

*Sawyer v. Health Care Solutions at Home, Inc.*, No. 15-5674, 2019 WL 1558668 (E.D. Pa. Apr. 10, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004)  . . . . . . . . . . . . . . . .   15

*Williams v. Aramark Sports, LLC*, Nos. 10-1044, 10-1547, 2011 WL 4018205 (E.D. Pa. Sept. 9, 2011)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15, 16

*Williams v. Sweet Home Healthcare, LLC*, No. 16-2353, 2018 WL 5885453 at *2 (E.D. Pa. Nov. 9, 2018)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*Wood v. Amerihealth Caritas Servs., LLC*, Nos. 17-3697, 19-2194, 2020 WL 1694549 (E.D. Pa. Apr. 7, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

<u>State Statutes</u>

Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. § 3-401 *et seq.* . . . . . . . . .   4

Maryland Wage and Payment Collection Law, Md. Code Ann., Lab. & Empl. § 3-501 *et seq.*   3

New Jersey Wage and Payment Law, N.J. Stat. 34:11-56a *et seq.* . . . . . . . . . . . . . . . . . . . .   4

Pennsylvania Wage Payment and Collection Law, 43 Pa. Comp. Stat. Ann. § 260.1 *et seq.*   3

Pennsylvania Minimum Wage Act, 43 Pa. Comp. Stat. Ann. § 333.101 *et seq.* . . . . . . . . . .   3

## I.    **INTRODUCTION**

Pursuant to Rule 23(e), Plaintiffs Matthew Carr, Terry Carr, David Tumblin, Terry Brown, and Luke Boulange move for final approval of the Class and Collective Action Settlement with Defendants Flowers Foods, Inc. and Flowers Baking Company of Oxford, LLC.

Through its June 3, 2020 order (Doc. No. 323), this Court preliminarily approved a Class and Collective Action Settlement. In accordance with that order, Class Members were notified of the Settlement. No Class Members have objected to the Settlement. Because the Settlement is fair, reasonable, and adequate, Plaintiffs respectfully ask this Court to grant final approval of the Settlement.

This hard-fought litigation proceeded for more than five years, with both sides represented by experienced counsel. There was significant discovery, document production, and depositions; class and collective-action certification proceedings; and expert damages analysis. After settlement negotiations spanning nearly a year, including two in-person mediation sessions, the parties reached a settlement. It provides not only monetary relief but also significant changes to Defendants' distribution program.

The Settlement creates a $13.25 million common fund that is allocated proportionally to Class Members and Collective Action Members in accordance with their claims and time worked. This allocation provides substantial relief to all settlement participants, with payments in the range of $3,000 to $70,000 with a mean recovery of approximately $30,000.

The Settlement also includes non-monetary terms that enhance the distributor relationship. These include, for example, creation and staffing of a Distributor Advocate position, who oversees an internal, alternative dispute-resolution process for distributors; a Distributor Review Panel, which provides an internal review process for resolution of contract-related disputes; formalizing distributors' right to have discussions with retailers' management personnel to discuss issues such

as product placement and days of service; and a process for distributors to raise issues regarding unprofitable accounts. The Settlement also provides distributors who agree to arbitration of applicable disputes receive an additional $3,500 payment.

The Settlement fully complies with the requirements for court approval under Rule 23(e)(2). Class Members are fairly and adequately compensated through substantial monetary and non-monetary relief. The Settlement provides a reasonable alternative to the burdens and risks of continued litigation or possible appeals. The parties, through their experienced counsel, carefully assessed the strengths and weaknesses of their respective positions and negotiated terms that reflect that assessment. Class Counsel fully endorses the Settlement and asks this Court to grant final approval.

## II.        FACTUAL BACKGROUND

Defendant Flowers Foods is headquartered in Georgia and holds numerous wholly-owned subsidiaries, including Flowers Baking Company of Oxford (hereinafter Oxford).  (Doc. No. 52 (Am. Compl.) ¶¶ 14-15.) Oxford contracts with distributors, who obtain the right to sell and distribute Defendants' products within defined territories. Under these contracts, distributors are classified as independent contractors. Plaintiffs alleged that Defendants misclassified distributors and that they should be paid and compensated as employees. (*Id.* ¶¶ 1, 6-7, 15.)

Plaintiffs allege that distributors' job responsibilities and the reality of their relationship with Defendants supports a finding that they are employees under the Fair Labor Standards Act and, as applicable, under the wage laws of Pennsylvania, Maryland, and New Jersey. Plaintiffs allege, for instance, that they are required to arrive at Defendants' warehouses early in the morning to stock their delivery vehicles with Defendants' products. (*Id.* ¶ 20.) Plaintiffs further allege that distributors are responsible for delivering those products to customers at times and places specified

by Defendants. (*Id.* ¶ 21.) Plaintiffs allege they had no significant sales or entrepreneurial influence over their day-to-day activities, in matters relating to pricing, merchandising, or product selection. (*Id.* ¶ 22.)

Defendants deny these allegations. They assert that distributors control the means, method, and manner of their work; that distributors have an ownership interest in their distributorships and entrepreneurial opportunities to increase profits and equity; and that distributors have discretion to determine prices, merchandising, product selection, and service times, within the bounds of their relationships with retailers.

Due to their classification as independent contractors, distributors bear business-related expenses. Defendants deduct some of these expenses from distributors' weekly settlement checks. (*See id.* ¶¶ 40, 45.) Also due to their classification as independent contractors, distributors were not paid overtime for more than 40 hours' work in a workweek. (*Id.* ¶ 46.) Plaintiffs accordingly sought to recover overtime wages under the FLSA and state law, as well as pay deductions under state law as applicable. Defendants have denied Plaintiffs' allegations, denied any violations of the law, and denied that Plaintiffs or Class Members are entitled to damages or other relief.

## III.   PROCEDURAL BACKGROUND

### A.   Litigation History

Plaintiffs are current and former distributors who contracted with Defendants. Plaintiffs filed their actions on behalf of themselves and others similarly situated for violations of the FLSA, 29 U.S.C. § 201 *et seq.*; the Pennsylvania Wage Payment and Collection Law, 43 Pa. Comp. Stat. Ann. § 260.1 *et seq.*; the Pennsylvania Minimum Wage Act, 43 Pa. Comp. Stat. Ann. § 333.101 *et seq.*; the Maryland Wage and Payment Collection Law, Md. Code Ann., Lab. & Empl. § 3-501 *et*

*seq.*; the Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. § 3-401 *et seq.*; and the New Jersey Wage and Payment Law, N.J. Stat. 34:11-56a *et seq.*

On January 26, 2017, this Court granted Plaintiffs' motion for conditional certification under § 216(b) of the FLSA. The FLSA collective is defined as follows:

> All persons who are or have performed work as "Distributors" for either Defendant under a "Distributor Agreement" or similar written contract with Defendant Oxford Baking Co. that they entered into during the period commencing three years prior to the commencement of this action through the close of the Court determined opt-in period and who file a consent to join this action pursuant to 29 U.S.C. § 216(b).

(Doc. No. 114.) There are currently 96 distributors who timely opted in following the notice period and whose claims were not dismissed (for failure to prosecute or other reasons).

After conditional certification, the Parties engaged in nearly three years of comprehensive discovery involving review of hundreds of thousands of pages of documents; answering hundreds of interrogatories and requests for admissions; and taking twenty-seven depositions, including 30(b)(6) depositions of both Defendants on numerous topics involving multiple witnesses. In addition, the 96 opt-in plaintiffs responded to written discovery and document requests.

In October 2018, Plaintiffs moved for Rule 23 class certification of the state-law claims. (*See* Doc. Nos. 262, 262-1.) Defendants opposed the motion, chiefly arguing that each state's employee classification standard required individualized inquiries and proof. Defendants also argued that the states had different laws and procedures for determining whether there were unlawful deductions from Class Members' wages, in addition to other individualized defenses. Defendants also asserted various exemptions under each state's wage and hour laws, arguing those exemptions required individualized proof. (*See* Doc. No. 268.) For instance, Pennsylvania and Maryland have a motor carrier exemption but New Jersey does not.

4

Defendants also brought a motion to decertify the FLSA collective action, on grounds that the opt-in plaintiffs' claims required individualized proof. Defendants argued that individualized factfinding was needed on whether opt-in plaintiffs were properly classified as employees or independent contractors, as well as whether opt-in plaintiffs were exempt from the FLSA under the outside sales or Motor Carrier Act exemptions. (*See* Doc. Nos. 263, 263-1.) Plaintiffs opposed decertification, asserting that common evidence would resolve these issues. (Doc. No. 267.)

In an order on May 8, 2019, this Court granted class certification under Rule 23 and denied decertification of the FLSA collective action. (Doc. No. 302.) An accompanying order defined the Rule 23 classes as follows:

> All persons who, at any time from [specified date] continuing through entry of judgment in this case, worked as distributors for Flowers Foods, Inc. and/or Flowers Baking Company of Oxford, Inc., in [Pennsylvania, Maryland, and New Jersey] and were classified as independent contractors under their distribution agreements.

(Doc. No. 305.) Defendants petitioned for interlocutory review of the class certification ruling but that petition was denied. The parties then started work on cross motions for summary judgment.

## B.    Settlement Negotiations

Settlement negotiations in this litigation spanned nearly one year. The parties retained Michael E. Dickstein, a highly skilled mediator who has worked on more than 600 class and collective cases, to facilitate arms-length negotiations. *See* Dickstein Dispute Resolution, https://dicksteindisputeresolution.com. The first formal in-person mediation occurred on May 5 and 6, 2019 and included related cases from three other jurisdictions: *Neff v. Flowers Foods, Inc.*, No. 15-254 (D. Vt.); *Rosinbaum v. Flowers Foods, Inc.*, No. 16-233 (E.D.N.C.); and *Noll v. Flowers Foods, Inc.*, No. 15-493 (D. Me.). While the mediation covered multiple cases, the parties negotiated and evaluated the claims in each jurisdiction separately.

5

Shortly after this Court's May 8 class certification order, the parties held a second in-person mediation session before Mr. Dickstein on June 13 and 14, 2019. The parties were unable to reach agreement but decided to continue negotiations with help from Mr. Dickstein. This was followed by numerous calls and e-mails and culminated with a third in-person mediation on December 9, 2019. It was only after this third mediation that the parties reached a comprehensive agreement to settle this litigation.

The Settlement provides substantial monetary and non-monetary relief to the class. It encompasses distributors who operated during relevant time periods[1] in Pennsylvania, Maryland, or New Jersey who did not sign a new distributor agreement with a class action waiver, except for those distributors who became Opt-In Plaintiffs before signing a new agreement. (*See* Doc. No. 322-2 at *7 (Section 3.7).)

### 1.   Monetary Terms

The Settlement provides significant monetary relief. Defendants will establish a settlement fund of $13.25 million, which provides for (i) payments to Class Members; (ii) service awards to each of the Named Plaintiffs of $10,000 each; (iii) attorney's fees equal to $3,372,500 (one-third of the total settlement fund) and costs; and (iv) additional $3,500 payments to each Class Member who timely returns the Arbitration Election Form and thereby accepts the terms of the accompanying Arbitration Agreement. The specific formula for calculating each Class Member's share is set forth in Section 13.2 of the Settlement. (*See* Doc. No. 322-2 at *35-*38.) In return for this consideration, Defendants obtain a general release of all claims that were or could have been

---

[1]     The covered periods are specified by the settlement: for Pennsylvania distributors, from December 1, 2012 to April 20, 2019; for Maryland distributors, from December 12, 2012 to April 20, 2019; and for New Jersey distributors, from March 24, 2014 to April 20, 2019.

asserted by Class Members in this action, except that the release does not cover FLSA claims by Class Members who did not opt in under the FLSA. (*See id.* at *21-*22.)

### 2.     Non-Monetary Terms

The Settlement also contains significant non-monetary terms and changes to Defendants' independent distributor model. These non-monetary terms were also negotiated at arms-length with the assistance of Mr. Dickstein. They include (i) the option to enter an Arbitration Agreement in exchange for an additional $3,500 payment; (ii) a Buy Back Option; (iii) implementation of a Distributor Review Panel; (iv) creation of a Distributor Advocate position; and (v) other program changes.

<u>Arbitration Agreement.</u> The Settlement provides current distributors the option to enter into an amendment to the distributor agreement, which adds alternative dispute resolution procedures and incorporates an arbitration agreement. These terms are voluntary and current distributors may elect or reject arbitration at their discretion.

The benefits and drawbacks of arbitration are further explained in a one-page summary that accompanied the election form in the settlement notice to Class Members. If distributors elect the Arbitration Agreement, they receive an additional payment of $3,500. And importantly, if a qualifying dispute proceeds to arbitration, Defendants agree to pay arbitration costs and fees (with the exception of circumstances where fee-shifting authority is ordinarily available to a court) and distributors can recover the same damages that they could in court. If current distributors do not accept the Arbitration Agreement, they do not receive the $3,500 payment but remain entitled to all other relief under the settlement. But to the extent Class Members refuse arbitration, the $3,500 payments do not revert to Defendants and instead the extra cash is distributed pro rata to the Class Members in accordance with Settlement terms. (*See* Doc. No. 322-2 at *6, *19-*20.)

<u>Buy Back Option.</u> The Settlement also provides current distributors the opportunity to sell their territory (or territories) for an amount equal to ten times the territory's weekly branded sales over a 52-week average. The timing and implementation of the Buy Back Option is set forth in the settlement and explained in the settlement notices to all current distributors. (*See id.* at *20-*21.)

<u>Distributor Review Panel.</u> The Settlement further requires Defendants to establish and use a Distributor Review Panel, which will operate in accordance with Exhibit 8 to the Settlement. (*See* Doc. No. 322-2 at *19, Doc. No. 322-13.) The Panel provides an internal process for appealing and resolving contract-related disputes, such as whether Oxford has properly issued notice of a breach of contract or whether a distributor failed to comply with good industry practice. If a distributor exercises the right to appeal, then the Panel will be charged with analyzing the dispute, making findings, and issuing a decision. This program will supply a fair and efficient process for resolving distributors' disputes.

The Panel will consist of three distributors who are not from the complaining distributor's warehouse; a sales manager or sales director who is not involved in the Defendants' relationship with the complaining distributor; and a representative from the corporate distributor relations department who has not been involved in the matter under review. To develop a pool of eligible volunteers for the Panel, Defendants will solicit distributors to participate on an annual basis. If distributors complete training provided by Defendants and submit a signed participation form, then they can join the pool of Panel members. When the Panel is called upon the decide a dispute, its members will be randomly selected from the pool, with adjustments to avoid a conflict of interest with someone involved in the dispute. The Panel will make decisions on a majority basis, by a secret ballot, and will issue those decisions in writing.

Distributor Advocate. The Settlement requires appointment of a Distributor Advocate in accordance with Exhibit 9 to the Settlement. (*See* Doc. No. 322-2 at *19, Doc. No. 322-14.) The Distributor Advocate will be responsible for addressing distributor issues that cannot be resolved locally and represent distributors' interests in discussions between distributors and Defendants. The Distributor Advocate will also be certified by the International Ombudsman Association, and to the extent practicable, the program will operate under the International Ombudsman Association Standards of Practice and that organization's Code of Ethics.

Other Program Changes. The parties also negotiated several other non-monetary terms that grant distributors increased discretion over pricing, product placement, and service hours; greater ability to address unprofitable accounts or increased product orders; and better communications between distributors and Defendants' management. These changes are discussed in Exhibit 7 to the Settlement, supplying tangible benefits for current distributors. (*See* Doc. No. 322-2 at *19, Doc. No. 322-12.) These changes are further, material consideration for the Settlement, including the release of Class Members' claims in this case.

## IV.   NOTICE PLAN

Before granting final approval of a class action settlement, the court must first determine whether the class received adequate notice. *Wood v. Amerihealth Caritas Servs., LLC*, Nos. 17-3697, 19-2194, 2020 WL 1694549 at *4-*5 (E.D. Pa. Apr. 7, 2020). Rule 23(c)(2)(B) provides that in the event of a class action settlement, the court must direct "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." That rule further requires the notice to state, in plain and concise language, the nature of the action; the class definition; the class claims and defenses; class members' right to appear, object, or opt out; and the binding impact of the settlement and release.

Through its order granting preliminary approval, this Court approved the parties' notice plan, appointed Atticus Administration as the Settlement Administrator, and scheduled a fairness hearing for September 28, 2020. (*See* Doc. Nos. 323, 324.) The Class notice explained the nature of the action and the Settlement terms, including the Settlement amount; the requested attorney's fees; how Class Members' Settlement payments are calculated; the estimated payment to the Class Member and the procedure for challenging that estimate; the prospective release of Class claims; and procedures for participating, objecting, or opting out of the Settlement. The notice also had information about the Arbitration Agreement and an election form for opting into the Arbitration Agreement. (*See* Doc. Nos. 322-4, 322-5, 322-6, 322-7, 322-8, 322-9.)

On or around June 18, 2020, Atticus sent Court-approved notices to the 265 identified Class Members. (*See* Atticus Decl. ¶ 5.) Before sending the notice, Atticus reviewed and skip-traced Class data to verify the accuracy of the addresses. (*Id.* ¶ 4.) After the notices were mailed, 35 were returned as undeliverable and sent to Experian for further skip tracing. Updated addresses were obtained for those Class Members and notices were successfully re-mailed to the updated addresses. (*Id.* ¶ 6.) Three notices were re-mailed by Class Members' request. (*Id.*) After diligent efforts, only five Class Members did not receive mailed notice, and 98% of Class Members were successfully noticed by mail. (*Id.*)

On or around July 31, 2020, Atticus mailed reminder packets to Class Members who had not responded to the notice. (Atticus Decl. ¶ 7.) As of the filing of this memorandum, neither Atticus nor any Class Counsel have received any objections the Settlement, and only one Class Member has opted out of the Settlement. (*Id.* ¶ 8.)

The notice plan provided for the best practicable notice under the circumstances, and it was reasonably calculated to reach substantially all Class Members. The notice also provided a clear,

concise, and plain summary of the Class claims, the defenses, and Class Members' rights. As a result, the notice plan complied with Rule 23(c)(2)(B) and 23(e)(1)(B). And in accordance with the Class Action Fairness Act, Atticus also provided due notice to state and federal officials. 28 U.S.C. § 1715(b). (Atticus Decl. ¶ 4.) This Court has ample reason to find that Class Members received adequate notice and may accordingly proceed to final approval.

## V.    <u>FINAL APPROVAL</u>

In accordance with Rule 23(e)(2), to grant final approval of a class action settlement, a court must determine that the settlement is "fair, reasonable, and adequate[.]" Because assessment of a class action settlement "requires an amalgam of delicate balancing, gross approximations and rough justice," district courts are afforded broad discretion in approving settlements. *See Williams v. Aramark Sports, LLC*, Nos. 10-1044, 10-1547, 2011 WL 4018205 at *6 (E.D. Pa. Sept. 9, 2011) (quotation omitted).

An initial presumption of fairness will attach to a class action settlement where (1) the settlement was negotiated at arms-length, (2) there was sufficient discovery, (3) the proponents of the settlement are experienced in similar cases, and (4) only a "small fraction" of class members object. *See, e.g., In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir. 2016); *Williams v. Sweet Home Healthcare, LLC*, No. 16-2353, 2018 WL 5885453 at *2 (E.D. Pa. Nov. 9, 2018).

The presumption is amply satisfied here. The Settlement was the product of protracted arms-length negotiations. It was not founded on incomplete discovery or any partial assessment of the merits, but instead came after numerous depositions and hundreds of thousands of pages of document production. The parties' attorneys are highly experienced in complex wage and hour cases. And after the best practicable notice, no Class Members objected and only one opted out of

the Settlement. Under these circumstances, this Court should apply the presumption of fairness to the Settlement.

To assess whether a settlement is fair, reasonable, and adequate, a district court is further guided by Rule 23(e)(2),[2] which requires courts to consider whether:

> (A)    the class representatives and class counsel have adequately represented the class;
>
> (B)    the proposal was negotiated at arm's length;
>
> (C)    the relief provided for the class is adequate, taking into account:
>
> > (i)    the costs, risks, and delay of trial and appeal;
> >
> > (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and
> >
> > (iv)   any agreement required to be identified under Rule 23(e)(3); and
>
> (D)    the proposal treats class members equitably relative to each other.

Taken together, these factors uniformly support final approval of the Settlement in this case.

**A.    Because Class Counsel and Plaintiffs vigorously advocated for the Class, resulting in a settlement that drew no objections from the Class, Class Counsel and Plaintiffs adequately represented the Class under Rule 23(e)(2)(A).**

---

[2]    By amendment effective December 1, 2018, Rule 23(e)(2) was substantially expanded to prescribe specific factors for evaluation of class action settlements. The purpose of the amendment was to supplant the "sheer number of factors" that had developed under prior case law and return the focus to "a shorter list of core concerns." *See* Fed. R. Civ. P. 23, Advisory Committee Note (2018). While some courts continue to consult the pre-amendment factors, many are now tracking the analysis prescribed by the rule. *See, e.g., Rose v. Travelers Home & Marine Ins. Co.*, No. 19-977, 2020 WL 4059613 at *6 n. 5 (E.D. Pa. July 20, 2020); *Wood v. Amerihealth Caritas Servs., LLC*, Nos. 17-3697, 19-2194, 2020 WL 1694549 at *6 & n. 7 (E.D. Pa. Apr. 7, 2020).

Adequacy of representation under Rule 23(e)(2)(A) largely overlaps with the requirements for representation under Rule 23(a)(4). In its May 8 class certification order, this Court found that Class Counsel and Plaintiffs are adequate representatives of the Class and there were no conflicts of interest that undermined adequacy. (Doc. No. 302 at 20.) That reasoning remains determinative now.

Class Counsel continues to demonstrate its adequacy through vigorous prosecution of this case, which included voluminous discovery and depositions; complex motion practice including class certification proceedings and a petition for interlocutory appeal; and expert analysis to calculate Class Members' damages. *Cf. Wood*, 2020 WL 1694549 at *6 (holding that class counsel demonstrated adequacy through their work to investigate and increase the value of class members' claims).

Plaintiffs likewise demonstrated their adequacy by fully participating in the case, providing their knowledge and understanding of the facts and assisting with investigation and discovery. The adequacy of their representation is reinforced by the fact that no Class Members objected, which supports the conclusion that the Settlement reflects Class Members' interests and that there is no conflict of interest. *Cf. Williams*, 2011 WL 4018205 at *8 (finding that low rate of objections strongly supported approval of settlement). Because both Class Counsel and Plaintiffs adequately represented the class, Rule 23(e)(2)(A) supports approval of the settlement.

**B.     Through serious, adversarial negotiations before an experienced mediator, Class Counsel engaged in arms-length negotiations under Rule 23(e)(2)(B).**

Rule 23(e)(2)(B) examines whether settlement was negotiated at arms length. As discussed above, the parties ardently litigated this case for more than five years, engaging in significant discovery and motion practice. Through these proceedings, Class Counsel was well advised of the risks and benefits of further litigation. So when settlement discussions began in earnest, Class

Counsel engaged in serious, adversarial negotiations that reflected genuine effort to maximize Plaintiffs' leverage and yield good results for Class Members.

In addition, the Settlement came after three formal, multi-day sessions with an experienced mediator. "[T]he participation of an independent mediator in settlement negotiations virtually [en]sures that the negotiations were conducted at arm's length and without collusion between the parties." *Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, No. 15-2460, 2016 WL 4766079 at *6 (E.D. Pa. Sept. 13, 2016) (quotation omitted). In between mediation sessions, the parties continued to negotiate through a mediator during a series of calls and e-mails. Because the Settlement arose out of adversarial negotiations with the assistance of an independent mediator, there were arms-length negotiations that favor approval of the Settlement under Rule 23(e)(2)(B). *See, e.g., Hall v. Accolade, Inc.*, No. 17-3423, 2020 WL 1477688 at *8 (E.D. Pa. Mar. 25, 2020).

**C.   Because the Settlement confers substantial monetary and non-monetary benefits to the Class, and because the Settlement reasonably balances the strengths of the Class claims against the risks posed by further litigation, the Settlement is adequate under Rule 23(e)(2)(C).**

The core concern of Rule 23(e)(2)(C) is whether a settlement provides adequate relief for the class. As discussed at length beforehand, the Settlement provides substantial monetary and non-monetary relief. A $13.25 million common fund will be used to pay the Class. Because this Court already approved attorney's fees, costs, and service awards, the remainder of the Settlement, approximately $8.7 million, will be paid Class Members, with payments in the range of $3,000 to $70,000 and a mean recovery of approximately $30,000. The Settlement also provides several forms of non-monetary relief, including the Arbitration Agreement, the Distributor Review Panel, the Distributor Advocate, and other changes to the relationship between distributors and Defendants.

The rule also sets forth four subfactors. Rule 23(e)(2)(C)(i) examines "the costs, risks, and delay of trial and appeal." This subfactor aligns with Third Circuit authorities that assess the strength of the plaintiffs' case and the risks posed by defenses and further litigation. *See, e.g., Williams*, 2011 WL 4018205 at *8-*9; *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004) (directing courts to assess whether a settlement "represents a good value for a weak case or a poor value for a strong case").

Plaintiffs believe the evidence shows that Defendants misclassified them as independent contractors, and when properly classified as employees, they should be paid overtime under the FLSA and state wage laws. Defendants challenge this argument on the facts and the law. And Defendants also raise various exemptions and other defenses under the FLSA and state wage laws, arguing that even if Class Members are classified as employees, they fall under outside sales or motor carrier exemptions. While Plaintiffs dispute Defendants' arguments, they acknowledge the risk these arguments pose to Class Members' claims.

Plaintiffs also believe they have strong evidence showing that Defendants took improper deductions from their wages. Defendants counter that Class Members' earnings do not constitute "wages" under the various state laws and that the deductions were allowed or contractually authorized, among other defenses. Defendants also contend that any amounts Plaintiffs receive, if Plaintiffs prevail, must be offset by amounts they received as independent contractors that they would not have otherwise received as employees. Plaintiffs again believe Defendants' arguments will fail but recognize that these arguments affect the likelihood of success and the amount of damages Class Members may recover.

All these risks are compounded by the prospects for success and corresponding risks of loss at summary judgment, at trial, or on appeal. When similar obstacles come to light in other

complex wage and hour cases, courts generally hold that potential costs, risks and delays weigh in favor of settlement. *See, e.g., Hall*, 2020 WL 1477688 at *9; *Wood*, 2020 WL 1694549 at *7. Plaintiffs are also mindful that continued class certification and collective action is not a foregone conclusion, and Defendants may seek to decertify the class. In light of the five years this litigation already consumed, and the costs, risks, and delay presented by further proceedings, there is good reason to finalize settlement now.

The remaining subfactors also support that outcome. Rule 23(e)(2)(C)(ii) considers the effectiveness of the method for distributing relief to the class. When a proposed settlement does not require class members to submit claims, such that class members will be paid without further action on their part, that method is effective and supports adequacy. *Hall*, 2020 WL 1477688 at *9. The Settlement provides an easy, efficient method of distributing payments to Class Members without further action by them. Because no Class Members have excluded themselves from the Class, each one will receive a check for their fair share of the Settlement fund. This is an effective, straightforward method that amply satisfies Rule 23(e)(2)(C)(ii).[3]

Rule 23(e)(2)(C)(iii) considers the terms of the proposed attorney fee award and the timing of the fee payment. Class Counsel previously petitioned for attorney's fees, equal to one-third of the common fund, of approximately $4.4 million. (Doc. Nos. 325, 326.) This fee is within the range of reasonable fees approved by Third Circuit courts in hybrid FLSA-state law wage cases.

---

[3]     In Plaintiffs' motion for preliminary approval of the Settlement, Plaintiffs devoted specific discussion to the Arbitration Agreement. As explained in greater detail there, the Settlement makes participation in the Arbitration Agreement entirely voluntary, and Class Members' payments are not contingent on their execution of the Arbitration Agreement. (*See* Doc. No. 322-1 at 23-24, 26.) There have not been any objections or other concerns raised regarding the Arbitration Agreement, and Class Members who elect to be bound by the Arbitration Agreement will receive further consideration in the form of a $3,500 payment. (*See* Doc. No. 322-1 at 23-28.)

*See, e.g., Williams*, 2011 WL 4018205 at *10 (observing that median fee award in class action cases in this District was 33.3%).

This Court approved the fee petition in an order on August 19, 2020. (Doc. No. 333.) The Settlement also provides that fees shall not be paid until all issues and appeals are concluded. (*See* Doc. No. 322-2 at *9-*10, *38 (defining "Effective Date" and providing that attorney's fees shall not be paid until 20 business days after that date).) When a fee payment awaits the conclusion of the litigation, this weighs in favor of the adequacy of the settlement. *Cf. Hall*, 2020 WL 1477688 at *9 (approving fee award that was timed to be paid at the same time as payments to class members). The lack of objections also weighs in favor of the fee award. *See Wood*, 2020 WL 2694549 at *7. Given this Court's prior ruling on the fee petition, and the fact that attorney's fees will not be paid until this litigation is over, the fee award supports adequacy in this case.

The remaining subfactor, under Rule 23(e)(2)(C)(iv), is the presence of any agreements "required to be identified" under Rule 23(e)(3). The purpose of this rule is to identify agreements, besides the settlement itself, that might reveal collusion or impact the adequacy of the settlement. If there are no such side deals, then this factor favors approval of the settlement. *See Wood*, 2020 WL 2694549 at *7. The Settlement in this litigation, previously filed and a matter of public record, is the sole agreement by and between Plaintiffs and their counsel and Defendants. Because there are no other agreements at stake in this litigation, Rule 23(e)(2)(C)(iv) also supports the adequacy of the Settlement.

**D.     Because the Settlement apportions payment between Class Members based on objective criteria such as the Class Member's claims, the time worked and compensation received, the Settlement treats Class Members equitably under Rule 23(e)(2)(D).**

Rule 23(e)(2)(D) requires this Court to consider whether "the proposed settlement treats class members equitably relative to each other." The underlying consideration is whether relief is

apportioned between class members in a way that "takes appropriate account of differences among their claims." Fed. R. Civ. P. 23, Advisory Committee Note (2018).

The payment to each Class Member is directly linked and tailored to their claims in this litigation. Each share is calculated individually from the transactional data of each Class Member's distributorship, based on the weeks Class Members worked during the relevant period. Using a common formula, compensation for unpaid overtime is estimated from Class Members' actual compensation in the relevant period. Using another common formula, compensation for unlawful deductions in derived from the actual deductions Defendants recorded in their payment systems.

For Class Members asserting FLSA claims as Opt-In Plaintiffs, with both federal overtime and state wage law claims, their damages are greater because they chose to pursue their right to overtime pay. Such treatment is equitable because these Class Members are making additional claims. *Cf. Hall*, 2020 WL 1477688 at *9 (discussing settlement in hybrid FLSA-state wage action and upholding differences, under Rule 23(e)(2)(C)(iv), "based on the relative strength of the overtime claims and each settlement participant's litigation posture"). Because the Settlement fairly apportions payment between Class Members, based on their claims and objective criteria, it treats Class Members equitably under Rule 23(e)(2)(D).

With due regard for Rule 23(e)(2) in its entirety, all factors support a determination that the Settlement is fair, reasonable, and adequate. As a result, this Court should grant final approval of the Settlement.

**E.      Because the Settlement reflects reasonable compromise of bona fide disputes under the FLSA, the Settlement should also be approved for the Opt-In Plaintiffs' collective-action claims.**

Claims under the FLSA can only be settled or compromised under the supervision of the U.S. Department of Labor or with court approval. *See, e.g., Kapolka v. Anchor Drilling Fluids*

*USA*, No. 18-1007, 2019 WL 5394751 at \*3 (W.D. Pa. Oct. 22, 2019). Though the Third Circuit has not addressed what factors should be considered when analyzing proposed FLSA settlements, district courts have generally followed the Eleventh Circuit's analysis in *Lynn's Food Stores, Inc. v. United States.* 679 F.2d 1350 (11th Cir. 1982). That case focused on whether there is a bona fide dispute between the parties, and if so, whether the proposed settlement is fair and reasonable. *Id.* at 1354; *accord, Cuttic v. Crozer-Chester Med. Ctr.*, 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012); *Acevedo v. Brightview Landscapes, LLC*, No. 13-2529, 2017 WL 4354809 at \*13 (M.D. Pa. Oct. 2, 2017).

A proposed settlement resolves a bona fide dispute if it reflects reasonable compromise over issues actually in dispute, not a mere waiver of statutory rights. *See, e.g., Sawyer v. Health Care Solutions at Home, Inc.*, No. 15-5674, 2019 WL 1558668 at \*2 (E.D. Pa. Apr. 10, 2019) (quoting *In re Chickie's & Pete's Wage & Hour Litig.*, No. 12-6820, 2014 WL 911718 at \*2 (E.D. Pa. Mar. 7, 2014).

The Opt-In Plaintiffs allege that due to their misclassification as independent contractors, Defendants did not pay overtime. Defendants deny liability, have disputed the Opt-In Plaintiffs' damages, and have argued that the Opt-In Plaintiffs are exempt from the FLSA. Defendants also contend they are entitled to various offsets for these claims as well if Plaintiffs do prevail. The parties have hotly litigated these issues in discovery and collective certification proceedings. To avoid the risks and uncertainty of more litigation, including trial and appeals over misclassification and FLSA exemptions, the parties agreed to a Settlement that resulted in substantial relief for the Opt-In Plaintiffs. Because the issues were hotly contested, and because the Settlement reflects reasonable compromise rather than a waiver of statutory rights, there was a bona fide dispute.

To determine whether a settlement is fair and reasonable for purposes of the FLSA, courts routinely consider the requirements for class action settlement under Rule 23. When a settlement satisfies the requirements for a fair, reasonable, and adequate settlement under Rule 23(e), there is also reason to find that the settlement is fair and reasonable for purposes of the FLSA. *See, e.g., Wood*, 2020 WL 1694549 at *8 (relying on prior Rule 23(e) analysis to support approval of FLSA settlement); *see also Hall*, 2020 WL 1477688 (observing that Rule 23(e) applies "an extra layer of stringency to the approval of FLSA collective actions").

For reasons discussed at length above, under Rule 23(e) the Settlement reflects a fair, reasonable compromise of the Opt-In Plaintiffs' claims. Class Members who are Opt-In Plaintiffs will receive greater payments because they took specific action to pursue their claims for overtime pay. Using Defendants' records to find the time worked, the Settlement applies objective criteria to calculate payments for the Opt-In Plaintiffs' FLSA claims. This substantial relief was the product of arms-length negotiations and reflects careful assessment of the benefits and risks of continued litigation. The Opt-In Plaintiffs all received notice of the Settlement and none objected. For these reasons, including those previously discussed under Rule 23(e)(2), there is ample reason to conclude that the Settlement is fair and reasonable under the FLSA. This provides further grounds to grant final approval of the settlement.

## VI.   <u>CONCLUSION</u>

For the foregoing reasons, the Settlement provides fair, reasonable, and adequate relief to all Class Members. Plaintiffs respectfully ask that their motion be granted and that this Court order final approval of the Settlement.

Dated: September 21, 2020.

**/s Shawn J. Wanta**

Shawn J. Wanta, *pro hac vice*
Christopher D. Jozwiak, *pro hac vice*
Scott A. Moriarity, *pro hac vice*
BAILLON THOME JOZWIAK & WANTA LLP
100 South Fifth Street, Suite 1200
Minneapolis, MN 55402
Telephone: (612) 252-3570
Fax: (612) 252-3571
samoriarity@baillonthome.com
sjwanta@baillonthome.com
cdjozwiak@baillonthome.com

Gordon Rudd, *pro hac vice*
David Cialkowski, *pro hac vice*
ZIMMERMAN REED LLP
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 341-0400
Gordon.Rudd@zimmreed.com
David.Cialkowski@Zimmreed.com

Peter Winebrake, *pro hac vice*
R. Andrew Santillo
Mark J. Gottesfeld
WINEBRAKE & SANTILLO, LLC
715 Twining Road, Suite 211
Dresher, PA 19025
Telephone: (215) 884-2491
pwinebrake@winebrakelaw.com
asantillo@winebrakelaw.com
mgottesfeld@winebrakelaw.com

Charles E. Schaffer
LEVIN SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (215) 592-1500
Fax: (215) 592-4663
cschaffer@lfsblaw.com

Susan E. Ellingstad, *pro hac vice*
Rachel A. Kitze Collins, *pro hac vice*
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Fax: (612) 339-0981
seellingstad@locklaw.com
rakitzecollins@locklaw.com
bdclark@locklaw.com

*Attorneys for Plaintiffs*